UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

CIVIL ACTION NO.  7:16-cv-00064-ART

WILLIE OUSLEY on behalf of the Estate of Patricia L. Ousley,                    PLAINTIFF

VS.          **ACTING COMMISSIONER'S REPLY IN SUPPORT OF HER
             PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

CAROLYN W. COLVIN, Acting Commissioner                          DEFENDANT
    of Social Security.

*******

## INTRODUCTION

This lawsuit arises out of an investigation conducted by the Social Security

Administration (SSA)'s Office of Inspector General (OIG) into a complex disability fraud

scheme that resulted in the federal indictment of, *inter alia*, prominent attorney Eric C. Conn and

former SSA Administrative Law Judge (ALJ) David Daugherty.  *See* Indictment, *United States v.

Conn*, No. 5:16-cr-22 (E.D. Ky. Apr. 1, 2016).  The indictment alleges that Daugherty assigned

Conn's cases to himself; that Daugherty solicited falsified medical evidence from Conn so that

he could issue favorable on-the-record decisions without hearings; that Conn provided

pre-completed template residual functional capacity reports to doctors who signed them without

amendment; that Conn received fees from SSA; and that Conn withdrew cash from his business

account to make payments to Daugherty.  *Id*. at 9-19.  The indictment further alleges that the

conspirators "intended that the SSA disburse retroactive and proactive disability benefits, [in] an

amount to exceed $600,000,000, . . . irrespective of the Claimants' actual entitlement to

benefits."  *Id*. at 16.

In 1994, Congress enacted sections 205(u) and 1129(l) of the Social Security Act (the

Act), 42 U.S.C. §§ 405(u), 1320a-8(l), as part of a program integrity effort to address precisely

these types of fraud schemes.  Pub. L. No. 103-296, § 206(d), the Social Security Independence and Program Improvements Act of 1994, 108 Stat. 1464, 1514.  Read together, these provisions require that as soon as the SSA OIG has reason to believe that fraud was involved in an individual's application for disability benefits, it must make that information available to the agency, and the agency must "immediately redetermine" the individual's entitlement to benefits, and "disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence."  *Id.*  If after conducting the redetermination, the agency determines that there is insufficient evidence to support the individual's entitlement to benefits, the agency "may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments."  42 U.S.C § 405(u)(3).

Consistent with those statutory requirements, following an SSA OIG referral in May 2015 reporting that there was a reason to believe that fraud was involved in Patricia L. Ousley's (deceased) application, SSA informed Plaintiff that it was redetermining the previous decision granting Ms. Ousley's disability insurance benefits.  As a result of that redetermination, the agency found that there was insufficient evidence supporting Ms. Ousley's entitlement at the time she was originally awarded benefits, and is in the process of assessing an overpayment.  As fully discussed in her motion to dismiss, Defendant submits that SSA's actions are fully consistent with the relevant statutory section, section 205(u) of the Act, 42 U.S.C. § 405(u), the Administrative Procedure Act (APA), and the Constitution, and Plaintiff's procedural claims fail as a matter of law.

**ARGUMENT**

I.      **Lori President's Declaration in Support of Defendant's Motion to Dismiss Is Properly Before the Court**

Plaintiff argues that the Court should not consider the "Declaration of Kelly Salzmann" and the "May 12, 2015 Memorandum from David F. Black to Helen L. Cooper" filed with Defendant's motion to dismiss because "[n]either of these documents is referred to, much less incorporated into, Mr. Ousley's Complaint" (ECF No. 13 (Pl.'s Opp.) at 1-2). As an initial matter, the Defendant filed a declaration by Lori President in support of her motion to dismiss in this case, not Kelly Salzmann (ECF No. 10-1, Declaration of Lori President (President Decl.)). Ms. President's declaration included the following attachments (1) ALJ Daugherty's fully favorable decision on Ms. Ousley's application for disability benefits dated September 2, 2010; (2) the May 12, 2015 referral from OIG pursuant to section 1129(l) of the Act, 42 U.S.C. § 1320a-8(1)[1]; (3) the Appeals Council (AC) notice of redetermination under sections 205(u) and 1631(e)(7) of the Act, 42 U.S.C. §§ 405(u), 1383(e)(7), dated May 18, 2015; (4) the AC notice of remand for a new hearing and a new decision dated July 2, 2015; (5) the ALJ's unfavorable redetermination decision dated January 29, 2016; and (6) the AC notice denying review of the ALJ's unfavorable redetermination decision dated March 7, 2016 (*id.*).

Although courts generally treat motions that rely on evidence outside of the pleadings as motions for summary judgment, Fed. R. Civ. P. 12(d), there is an exception for documents that "are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "A court may consider these documents without converting the defendants' motion into a motion for summary judgment."

---

[1] Defendant presumes Plaintiff is referring to this document attached to Ms. President's declaration as "Attachment 2" when referencing the "May 12, 2015 Memorandum from David F. Black to Helen L. Cooper" (*see* Pl.'s Opp. at 1-2).

*Estep v. City of Somerset, Ky.*, No. CIV.A. 10-286-ART, 2011 WL 845847, at *4 (E.D. Ky. Mar. 8, 2011) (*citing Weiner v. Klais & Co.*, 108 F.3d 86, 88–89 (6th Cir. 1997)).

In his complaint, Plaintiff cites the ALJ's decision dated September 2, 2010, finding Ms. Ousley entitled to a period of disability and disability benefits, (ECF No. 1 (Compl.) ¶ 5); the AC notice of redetermination dated May 18, 2015 indicating "that a new administrative law judge would be disregarding certain allegedly fraudulent evidence" (Compl. ¶¶ 6-7); the ALJ's unfavorable redetermination decision dated January 29, 2016 (Compl. ¶ 9); and the AC's denial of review of that decision (Compl. ¶¶ 9-10). These documents were expressly referenced in Plaintiff's complaint, and are central to Plaintiff's challenges to "[t]he actions of the Defendant in seeking to redetermine Plaintiff's entitlement to benefits . . . ." (Compl. ¶¶ 11-16). While not specifically referenced in the complaint, the May 12, 2015 memorandum—which provided SSA with notice of the OIG's reason to believe that fraud was involved in Plaintiff's and other individuals' applications, thus triggering SSA's obligation to redetermine the underlying cases— is clearly implicated by Plaintiff's reference to the May 18, 2015, notice of redetermination. And Ms. President's declaration simply provided an evidentiary foundation for the attached documents. Accordingly, all of those documents—which evidence the process Defendant followed in this case—are central to the claims contained in Plaintiff's complaint and therefore are properly before the Court in support of Defendant's motion to dismiss. As such, Plaintiff's request to strike these documents should be denied. Nonetheless, even if the Court disagrees and finds that it cannot consider Ms. President's declaration and the May 12, 2015 memorandum, the remaining facts and documents fully support the arguments raised in Defendant's motion to dismiss.

**II.    Count One Should Be Dismissed Because the Redeterminations Do Not Violate the Agency's Reopening Regulations.**

In her memorandum in support of her motion to dismiss, Defendant explained that the SSA is conducting redeterminations in accordance with the express language contained in section 205(u) of the Act and further that the reopening regulations, which Plaintiff alleges SSA is violating, are inapplicable to the redeterminations (*see* ECF No. 10 (Def.'s Mot.) at 7-8). Specifically, Defendant pointed out that the distinction between "redeterminations" and "reopenings" is supported by the statute's plain language, which uses the word "redetermination," as well as the legislative history which confirms that Congress enacted section 205(u) precisely because the reopening rules that Plaintiffs cites were "cumbersome and unworkable" in addressing cases of fraud in applications for benefits (*id*.).[2]  As the legislative history makes clear, the premise behind sections 205(u) and 1129(l) was that cases of widespread fraud warranted a more streamlined process than the "reopening" process that already existed. Moreover, it makes little sense to read section 205(u) as requiring thousands of mini-trials on fraud by multiple fact-finders where there is no hint of any such requirement or that Congress intended SSA to use the same exact process for large fraudulent schemes as it does for fraud on an individual basis.

Yet, despite the clear language of section 205(u), Plaintiff disagrees with SSA's interpretation and asks this Court to ignore the plain statutory language because a few sentences in the legislative history use the words "reopen" or "reopening" (Pl.'s Opp. at 4).  Even if

---

[2] *See* Report on Reforms to Address Supplemental Security Income Fraud and Abuse Involving Middlemen, at 7 (May 12, 1994), http://congressional.proquest.com/congressional/docview/ t21.d22.cmp-1994-wam-0010?accountid=14740 (last visited Aug. 3, 2016).  Although the Committee only referred to SSI benefits, the resulting amendments were made to both title II and title XVI of the Act.

Plaintiff believes that this history renders the statute ambiguous, SSA's interpretation of the Act it administers, set out in the Hearings, Appeals, and Litigation Law (HALLEX) manual and Social Security Rulings, is entitled to at least *Skidmore* deference, if not *Chevron* deference. *See Chevron, U.S.A. Inc. v. Nat. Resources Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Barnhart v. Walton*, 535 U.S. 212, 221-22 (2002) ("[T]he fact that the Agency previously reached its interpretation through means less formal than 'notice and comment' rulemaking, . . . does not automatically deprive that interpretation of the judicial deference otherwise its due."); *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs*, 545 U.S. 967, 980 (2005) (*Chevron* requires court to accept reasonable construction of statute even if the agency's reading differs from what the court believes is the best statutory interpretation); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140, (1944) (an agency's interpretation of its statute contained in opinion letters, policy statements, agency manuals, or enforcement guidelines, is entitled to deference); *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995) ("Although social security rulings do not have the force or effect of law, we are persuaded that *Chevron* applies to social security rulings insofar as the rulings directly involve construction of the statute.").

III.    **Count Two Should Be Dismissed Because the Redeterminations Do Not Violate the Due Process Clause of the Fifth Amendment.**

Plaintiff also incorrectly alleges that SSA violated Ms. Ousley's due process rights because he has not been provided the opportunity "to challenge the (unsupported) allegations of fraud until now" (Pl.'s Opp. at 5). Section 205(u) requires no such opportunity; rather, the section 205(u) process is triggered once the OIG notifies the Commissioner that it has "reason to believe" that fraud was involved in the application for monthly insurance benefits. *See id.*; 42 U.S.C. § 1320a-8 (l). And, once triggered, the statute expressly directs the Agency to "*disregard any evidence if there is reason to believe* that fraud or similar fault was involved in

the providing of such evidence."  42 U.S.C § 405(u)(1)(B) (emphasis added).  Thus, under the

statute, once there is a "reason to believe" fraud may have been involved in the provision of the

evidence, SSA is required to disregard that evidence.  Here, SSA actions were completely

consistent with the clear language of the statute and Congress's unambiguous intent.  *See Martin*

*v. Colvin*, No. 15-46-ART, 2015 WL 7202484, at *4 (E.D. Ky. Nov. 16, 2015), reconsideration

denied, No. CV 15-46-ART, 2016 WL 1305891 (E.D. Ky. Apr. 1, 2016), pending appeal,

No. 16-5527 (6th Cir. Apr. 20, 2016) (holding that in redetermining plaintiffs' entitlement under

42 U.S.C. § 405(u) and disregarding "allegedly fraudulent medical evidence," "SSA obeyed its

statutory commands").

     In any event, SSA has provided Plaintiff with appropriate due process protections.  He is

being provided notice and an opportunity to be heard regarding Ms. Ousley's entitlement to

disability benefits.  *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("[D]ue process

[requires] the opportunity to be heard at a meaningful time in a meaningful manner.")

(quotations and internal citation omitted); *id*. at 340 (due process does not require evidentiary

hearings prior to termination of disability benefits).  And if SSA finds that there is insufficient

evidence supporting the beneficiary's disability at the time of the original allowance, the Act

permits Plaintiff to seek a waiver of any assessed overpayment.  *See* 42 U.S.C. § 404(b) ("In any

case in which more than the correct amount of payment has been made, there shall be no

adjustment of payments to, or recovery by the United States from, any person who is without

fault if such adjustment or recovery would defeat the purpose of this title or would be against

equity and good conscience.").  In sum, the administrative process provided to Plaintiff more

than satisfies the requirements of due process and, thus, Plaintiff's due process claims cannot

succeed as a matter of law.

IV.     **Count Three Should Be Dismissed Because the Redeterminations Do Not Violate the APA.**

Plaintiff asserts that the APA's formal adjudication requirements apply to the section 205(u) redetermination process, but such a claim is erroneous (*see* Pl.'s Opp. at 6-8).  The APA's formal hearing requirements are limited to adjudications "required by statute to be determined on the record after opportunity for an agency hearing."  5 U.S.C. § 554(a); *see also Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 548 (1978) (ruling that courts cannot require an agency to use more formal rulemaking procedures than those required by statute); *PBGC v. LTV Corp.*, 496 U.S. 633, 654-55 (1990) (upholding an informal agency adjudication without an oral hearing when the statute did not require a hearing to be on the record); *Crestview Parke Care Ctr. v. Thompson*, 373 F.3d 743, 748 (6th Cir. 2004) ("Agencies need only employ this set of formal adjudication procedures if there is an adjudication required by statute to be determined on the record after opportunity for an agency hearing." (citations omitted)).

Under section 205(u) of the Act, the agency must "immediately" redetermine an individual's entitlement to benefits if there is reason to believe that fraud or similar fault was involved in that person's application for benefits.  When it conducts a redetermination, the agency is required to "disregard any evidence if there is reason to believe that fraud or similar fault was involved in providing such evidence."  42 U.S.C § 405(u)(1)(B).  Section 205(u) itself does not require any hearing, let alone a hearing "on the record."  Consequently, the APA's formal adjudication requirements do not apply.  Still, as previously explained, Plaintiff is being provided with a number of procedural protections, including a hearing before an ALJ and the opportunity to provide evidence during that hearing to establish entitlement to benefits at the time of the application.  Consequently, Plaintiff's claims are without merit.

Plaintiff further argues that "adjudicators are effectively being directed by investigators or prosecutors within the agency" (Pl.'s Opp. at 8).  Again, Plaintiff mischaracterizes the statute. An OIG referral under section 1129(l) of the Act simply triggers a process—it does not direct an outcome.  Moreover, it is a process set forth in statute that neither SSA OIG nor the agency has any power to deviate from or control.  It was Congress who directed SSA OIG to provide information to SSA based on its reason to believe that fraud was involved in individuals' applications, and Congress who directed SSA to conduct redeterminations upon receipt of this information.  *See* 42 U.S.C. §§ 405(u), 1320a-8(l).  Importantly, Congress vested exclusive authority in the Commissioner to decide the ultimate issue regarding termination of benefits and assessment of an overpayment.  SSA OIG has no role in that determination—let alone the authority to direct such a decision.  *See* 42 U.S.C. § 405(u)(3).  Plaintiff's arguments are thus unavailing.

Plaintiff also asserts that the HALLEX manual I-1-3-25 (updated Feb. 25, 2016), available at https://www.ssa.gov/OP_Home/hallex/I-01/I-1-3-25.html, relating to redeterminations requires notice and comment rulemaking under the APA (*see* Pl.'s Opp. at 8-9). This claim can be easily rejected.  As interpretative rules, "the HALLEX and other Social Security Rulings . . . are not subject to notice and comment rulemaking."  *Robertson v. Colvin*, No. 3:16-cv-02113, 2016 WL 3406134, at *2 (S.D.W. Va. June 17, 2016), *see also* 5 U.S.C. § 553(b)(3)(A) (excepting interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice from the notice and comment rulemaking requirements). And despite Plaintiff's suggestion to the contrary, these rules merely restate and interpret section 205(u)'s mandate that the agency redetermine entitlement to disability benefits if there is a reason to believe that fraud was involved in an individual's application, and when redetermining

eligibility, disregard evidence if there is reason to believe that fraud was involved in the provision of the evidence. *See Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 679 (6th Cir. 2005); *First Nat'l Bank v. Sanders*, 946 F.2d 1185, 1188-89 (6th Cir. 1991). ("For purposes of the APA, substantive rules are rules that create law, while in contrast interpretive rules merely clarify or explain existing law or regulations and go to what the administrative officer thinks the statute or regulation means." (internal citations omitted)).  Plaintiff's APA claims are meritless.

**V.      Redeterminations Do Not Violate Section 205(u) of the Social Security Act.**

Plaintiff asserts for the first time in his opposition brief that any evidence that would support a reason to believe that fraud was involved in Ms. Ousley's claim "existed many years before the Defendant initiated Mr. Ousley's redetermination  process and thus the Defendant violated the 'immediately' requirement'" in section 205(u) of the Act. (Pl.'s Opp. at 10).  As an initial matter, this assertion should not be considered because Plaintiff cannot amend his Complaint by raising a new claim in an opposition brief.  *See Kallick v. U.S. Nat. Bank Ass'n*, No. CIV.A. 12-106-DLB, 2012 WL 5178152, at *6 (E.D. Ky. Oct. 18, 2012) ("It is a basic principle that the complaint may not be amended by [a] brief[ ] in opposition to a motion to dismiss . . . . ") (*quoting Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012)).

Even if Plaintiff had properly presented this claim, the argument is without merit.  As even Plaintiff admits, section 205(u) of the Act specifically contemplates that the agency delay taking adverse action if it would jeopardize the criminal prosecution of a person involved in the suspected fraud (Pl.'s Opp. at 15).  Moreover, OIG may delay referring cases to the agency for the same reason.  42 U.S.C. § 1320a-8(l).  Here, as contemplated by the statute, SSA waited to

notify individuals that their benefits would be redetermined until it received a referral from the SSA OIG permitting it to take such action.

On May 12, 2015, the agency received a referral from the SSA OIG pursuant to section 1129(1) of the Act, 42 U.S.C. § 1320a-8(1), informing SSA that it had reason to believe that fraud had been involved in 1,787 individuals' applications for benefits under titles II and XVI (President Decl. ¶ 3).  In each of these cases, the referral stated that the OIG had reason to believe that Mr. Conn or his firm submitted pre-completed "template" forms purportedly from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O., dated between January 2007 and May 2011, in support of each individual's application for benefits (*id.*).  The OIG informed the SSA that it could proceed with taking adverse action as a result of its redetermination of the cases under sections 205(u) and 1631(e)(7) of the Act, 42 U.S.C. §§ 405(u), 1383(e)(7) (*id.*).  Soon thereafter, SSA began to notify the affected individuals of the redeterminations, and that their respective cases would be remanded to ALJs for further proceedings and new decisions (President Decl. ¶¶ 4, 5).

Thus, not only is there absolutely no merit to Plaintiff's  assertion that the agency did not act in a timely manner, but even if there was some delay, there is no support in the statute for the proposition that delay somehow limits SSA from exercising its statutory mandate to redetermine eligibility for benefits if there is suspected fraudulent information in the application for those benefits.  Plaintiff's allegations that the agency was somehow complicit in the alleged delay does not correct this deficiency in logic, for it does not follow (nor make sense) that any delay completely bars SSA from effectuating its statutory mandate to redetermine entitlement for benefits when there is a reason to believe that there was fraud in the application for those benefits.

**CONCLUSION**

For the foregoing reasons, this Court should dismiss Counts One, Two, and Three of

Plaintiff's Complaint with prejudice.

Respectfully submitted,

KERRY B. HARVEY
UNITED STATES ATTORNEY


By:    /s/ John S. Osborn, III
JOHN S. OSBORN, III
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
Phone: (859) 685-4812
Facsimile: (859) 233-2533
John.Osborn@usdoj.gov

Of Counsel for the Defendant:

John Lee, Regional Chief Counsel, Denver
Sara Pappas Bellamy, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel, Region VIII
1961 Stout Street, Suite 4169
Denver, Colorado 80294-4003


**CERTIFICATE OF SERVICE**

I certify that on August 5, 2016, I electronically filed the foregoing with the Clerk of Court by

using the CM/ECF system, which will send a notice of electronic filing to the following

CM/ECF participant, Joseph Lane, Esq., Counsel for Plaintiff.

/s/ John S. Osborn, III
JOHN S. OSBORN, III
Assistant United States Attorney